# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 20-cv-20688-BLOOM/LOUIS

YOLANDA MELO,

    Plaintiff,

vs.

ANDREW SAUL,
Commissioner of Social Security Administration,

    Defendant.

_____/

## REPORT AND RECOMMENDATIONS

**THIS MATTER** is before the Court on Plaintiff Yolanda Melo's Motion for Summary Judgement (ECF No. 17) and Defendant Andrew Saul's, Commissioner of Social Security Administration, Motion for Summary Judgement (ECF No. 19). These Motions were referred to the undersigned United States Magistrate Judge by the Honorable Beth Bloom, United States District Judge, for a Report and Recommendation (ECF No. 11). Upon consideration of the briefing and the record, the undersigned **RECOMMENDS** that Plaintiff's Motion (ECF No. 17) be **GRANTED, in part** and Defendant's Motion (ECF No. 19) be **DENIED**.

    **I.    PROCEDURAL BACKGROUND**

Plaintiff Yolanda Melo ("Plaintiff") appeals the Commissioner's denial of her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). On July 27, 2015, Plaintiff filed her application for DIB and SSI, alleging disability beginning on October 8, 2014

(R. 21). [1] Following the denial of her claim at both the initial and reconsideration levels, Plaintiff requested an administrative hearing before an administrative law judge ("ALJ"). A hearing was held before ALJ Norman Hemming on November 2, 2018 (R. 21). Plaintiff, who was represented by counsel, testified at the hearing, as did a vocational expert ("VE"). On July 10, 2018, the ALJ issued his unfavorable decision, finding that Plaintiff was not disabled from the alleged onset date through her date-last-insured (R. 23-32). Plaintiff sought review of the ALJ's decision but her request for review was denied by the Appeals Council (R. 10). Plaintiff now seeks judicial review of the ALJ's decision. Plaintiff has exhausted her administrative remedies, and, as such, this case is ripe for review.

## II. STANDARD OF REVIEW

### A. Legal Principles

A district court's review of the Commissioner's decision is limited to determining whether the decision as a whole is supported by substantial evidence in the record. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Substantial evidence is defined in this context as relevant evidence which a reasonable person would accept as adequate to support the conclusion reached. *Williams v. Astrue*, 416 Fed. App'x. 861, 862 (11th Cir. 2011). In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

If the Commissioner's decision is found to be supported by substantial evidence, then the reviewing court must affirm the decision, even if proof preponderates against it. *Dyer*, 395 F.3d at

---

[1] Plaintiff originally alleged an onset date of October 31, 2010, but amended it at the administrative hearing (R. 100-01, 474).

1210. It is not the place of the reviewing court to reweigh the evidence or substitute its judgment for that of the Commissioner. *Id.* This restrictive standard of review set out above, however, applies only to findings of fact. No presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### B. Regulatory Framework

A claimant must be "disabled" to be eligible for social security benefits. 42 U.S.C. § 1382. A claimant is disabled if she is unable to "engage in any substantial activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A "physical or mental impairment" is one that "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

A claimant bears the burden of proving that she is disabled. *Jones v. Apfel,* 190 F.3d 1224, 1228 (11th Cir. 1999); 20 C.F.R. §§ 404.1512(a), 416.912(a). The Social Security regulations outline a five-step sequential evaluation process for deciding whether a claimant is disabled: (1) whether she is currently engaged in substantial gainful activity; (2) whether she has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of a specified impairment in the Listing of Impairments; (4) whether she can perform her past relevant work despite her impairments; and (5) whether she can perform other work found in

the national economy. *Brightmon v. Soc. Sec. Admin., Comm'r*, 743 F. App'x 347, 351 (11th Cir. 2018); 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

**III.   THE RECORD**

    **1.   Hearing Testimony**

        **a.   Plaintiff's Testimony**

Plaintiff was 58 years old at the time of the hearing (R. 90). She was born in Dominican Republic (*id.*). Plaintiff completed the sixth grade in the Dominican Republic and has not had further schooling (*id.*).

Plaintiff indicated that beginning in 2003, she has been self employed as a housekeeper. Her work entailed cleaning houses, washing bathrooms, cleaning kitchens, and moving furniture (R. 91). As a housekeeper, Plaintiff earned about $7.00 per hour (*id.*). The heaviest thing Plaintiff had to lift as a housekeeper was 35 pounds (*id.*). Plaintiff also reported employment at a Marshall's store, where she was responsible for cleaning and straightening out clothes (R. 92). She left that job because she needed to work more hours and did not feel safe working at night (*id.*). Plaintiff then worked at a learning center, where she was responsible for cleaning classrooms, and the heaviest thing she had to lift was a bucket of water, weighing approximately 8 pounds (R. 93). Later, Plaintiff worked at a bakery, where she packaged bread and the heaviest thing she lifted was 15 pounds (R. 94).

In 2005, Plaintiff left her job at the bakery to care for her sister who had become depressed due to the death of her daughter (R. 94). Plaintiff's sister paid her "whatever" she was able to, but it was not much (R. 95). While caring for her sister, Plaintiff cooked, cleaned, and helped her sister bathe (*id.*). Plaintiff then worked for a hotel as a housekeeper cleaning rooms and bathrooms, and vacuuming; there, she lifted at most 40 pounds (*id.*). She left that job because she moved with her

sister to another area of Florida (R. 96). After moving, she found a job as a caretaker at a group home for special needs children (*id.*). In this position, she helped the children bathe, cleaned their bedrooms, and cooked breakfast and dinner (*id.*).

While working at the group home, Plaintiff injured her neck and back and filed a workman's compensation claim against her employer (R. 97). Plaintiff retained an attorney and was able to obtain a payment of $5,000 (R. 98). In 2014, Plaintiff worked as a housekeeper. However, due back pain from an accident on October 8, 2014, Plaintiff testified that she has been unable to work beyond that date (R. 100).

Plaintiff complains of back pain due to a surgery on her back and reports that the pain prevents her from lifting anything besides her purse (R. 99). Plaintiff ranked her pain at a level 9 out of 10 and testified that she can stand for at most 30 minutes at a time and sit for at most 20 minutes (R. 100). Plaintiff describes a typical day as one in which she wakes up early, walks around for five minutes, then she lays down and elevates her feet or legs (R. 103). Plaintiff indicates that she has to lay down three to four times a day due to cramps (*id.*). Plaintiff is able to shower on her own but when her legs hurt a lot, her roommate helps her by placing a stool in the bathroom (R. 104). Plaintiff reports pain to her neck, back, and right arm as a result of her back surgery and later accident (R. 107).

Plaintiff does not have breakfast and makes herself a sandwich for lunch (R. 105). For dinner, Plaintiff eats what her roommate prepares (*id.*). Plaintiff's niece used to provide her with $300 to go towards rent but since her niece passed away, Plaintiff's roommate, a family friend, has allowed her to continue living with her for free (R. 106).

### b. Vocational Expert's Testimony

Vocational Expert Tweedy Dillon testified at the hearing (R. 108). The VE noted that Plaintiff's past relevant work included a housekeeper, sales attendant, food packager, and home

attendant (*id.*). The VE testified that a hypothetical claimant of Plaintiff's age and background, who is able to function at a light exertional level (limited to reaching only with her left arm) and without mental limitations, can perform the employment of a housekeeper or sales attendant (R. 110). She testified that if that same claimant could only stand for 30 minutes at a time, sit for 20 minutes, and walk for only 10 minutes at a time, then that claimant could not perform any jobs in the national economy (*id.*).

   2. **Summary of Medical Evidence**

      a. **Dr. Jose Marquez**

Dr. Jose Marquez, neurologist, treated Plaintiff from 2014 through 2015. At her initial evaluation, Plaintiff complained of cervical and lumbar pain, right hand pain, right thumb pain, anxiety, and insomnia (R. 605). Upon physical examination, Plaintiff appeared to be in acute distress secondary to pain (R. 607). Dr. Marquez explained that Plaintiff had developed cervical and lumbar sprain/strain syndrome, posttraumatic headaches and vertigo, severe anxiety and post-traumatic stress disorder (R. 609). Plaintiff had also developed disk bulge and disk herniations in both the cervical and lumbosacral spine as a result of a prior slip and fall accident (*id.*). Dr. Marquez prescribed Plaintiff Prozac and Xanax (*id.*).

On March 16, 2015, Dr. Marquez performed a final neurological examination on Plaintiff. In his notes, he indicated that Plaintiff's physical condition had improved but she was still experiencing paraspinous spams and decreased range of motion of the spine (R. 603). Dr. Marquez noted that nerve studies revealed bilateral carpal tunnel syndrome, however, upon physical examination there was no evidence of such (R. 604).

      b. **Dr. Thomas Roush**

Dr. Thomas Roush, spine surgeon, treated Plaintiff on multiple occasions in 2015. On

February 16, 2015, Dr. Roush performed an initial evaluation of Plaintiff (R. 645). During the evaluation, Plaintiff reported lower back pain at a level 9/10 (*id.*). The pain is dull, achy, sharp shooting pain that radiates into her lower extremities, predominantly on her right side (*id.*). Plaintiff reported that her symptoms worsen with prolonged sitting or standing (*id.*). Plaintiff rated her neck pain as tolerable (*id.*). Despite these symptoms, Plaintiff's musculoskeletal strength was relatively intact, with a 4/5 in the right lower extremity and 5/5 throughout (R. 646).

On March 30, 2015, Plaintiff returned for a follow-up visit (R. 649). Plaintiff reported she underwent bilateral lumbar transforaminal epidural steroid injection and noticed moderate improvement to her pain even though the pain eventually returned (*id.*). The following month, Plaintiff's reports of neck and lower back pain remained generally unchanged, however, her strength throughout remained at a 5/5 (R/ 651-52). In June 2015, Plaintiff reported improvement of the pain in her lower extremities (R. 654).

On July 6, 2015, Plaintiff reported that she had undergone laminectomy and microdiscectomy and posterior decompression in her spine (R. 656). Plaintiff indicated that continues to have good results and that her back pain was tolerable with compliance with her medications (R. 656). The next month, Plaintiff reported that she had good days and bad days, and that she had begun a home exercise program that has provided moderate relief to her pain (R. 658). In November 2015, Plaintiff reported a slight improvement to her pain, describing her pain as a 4/10 (R. 662). In December 2015, Plaintiff reported she continued to have back pain that interfered with her daily living; however, she had been attempting back stretches which eased the pain (R. 664).

### c. Palmetto General Hospital

On December 29, 2017, Plaintiff presented to the emergency room with complaints of right

shoulder pain (R. 719-21). Physical examination revealed decreased strength and tenderness in the right shoulder, yet, X-rays did not reveal any acute findings (R. 744-45). On March 20, 2018, Plaintiff presented to the emergency room with complaints of chronic lower back pain (R. 693-95). X-rays did not reveal any acute symptoms and Plaintiff was discharged (R. 695).

### 3. ALJ's Decision

After reviewing the evidence and conducting the five-step sequential analysis, the ALJ determined that Plaintiff was not disabled and denied both applications for DIB and SSI benefits (R. 23-32).

At step one, the ALJ determined that Plaintiff meets the insured requirements of the Social Security Act through September 30, 2015 (R. 23). Plaintiff has not engaged in substantial gainful activity since October 8, 2014, the alleged onset date (*id*.). At step two, the ALJ determined that Plaintiff has the following severe impairments: degenerative disc disease, status post lumbar discectomy, and lumbosacral decompression and fusion (*id*.). These impairments "significantly limit the ability to perform work activities." (*id*.). The ALJ identified other physical impairments such as bilateral carpal tunnel syndrome, tarsal tunnel syndrome, bilateral neuropathies, and brain stem lesion, and determined that none are severe impairments that cause more than minimal work-related limitations (R. 24). Likewise, the ALJ noted that Plaintiff experienced major depressive disorder but that it did not cause more than minimal limitations in Plaintiff's ability to perform the basic mental work activities (*id*.).

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the Listings under 20 CFR Part 404, Subpart P, Appendix 1 (R. 25). At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work, except that she has non-exertional limitations (R. 25). Considering that Plaintiff could perform light work, the ALJ found that Plaintiff is capable

of performing past relevant work as a housekeeper because that work does not require the performance of work-related activities precluded by Plaintiff's RFC (R. 31). Because Plaintiff could perform her past relevant work, the ALJ determined Plaintiff was not disabled and did not proceed to step five (R. 32).

## IV.   ANALYSIS

Plaintiff argues that the ALJ committed reversible error in denying her application for benefits. The errors include the ALJ's failure to: (1) reconcile inconsistent past work records and testimony and thus, erring in classifying Plaintiff's work as a housekeeper as "past relevant work;" (2) support his RFC determination with substantial evidence; and (3) properly assess Plaintiff's alleged symptoms and limitations. In response, Defendant argues that the ALJ properly considered Plaintiff's testimony and income records to support his finding that Plaintiff's work as a house keeper constitutes "past relevant work," and that the ALJ's RFC determination and treatment of Plaintiff's subjective complaints are supported by substantial evidence in the record.

After careful consideration of the ALJ's opinion and the record as a whole, I recommend that Plaintiff's Motion be **GRANTED, in part**. Although Plaintiff's claims that the ALJ erred in his RFC determination and assessment of Plaintiff's claims are without merit, I recommend reversal of the ALJ's decision on the grounds that he failed to clarify the discrepancies between Plaintiff's Work History Report, earning queries, and Plaintiff's testimony before deciding that Plaintiff's occasional employment as a housekeeper constituted "past relevant work," which Plaintiff could perform.

   1. **ALJ's Determination of the Severity of Plaintiff's Bilateral Carpal Tunnel Syndrome and RFC**

Plaintiff argues that the ALJ erred at step two by finding that Plaintiff's bilateral carpal tunnel syndrome was not severe and that her symptoms did not cause more than minimal work-

9

related limitations (ECF No. 17 at 11). Plaintiff contends that because of this error, the ALJ also failed to consider the severe impairment in his RFC determination. In opposition, Defendant argues that any error at step two is harmless because the ALJ considered Plaintiff's bilateral carpal tunnel in his RFC determination and his ultimate RFC determination is supported by substantial evidence (ECF No. 19 at 11).

The finding of any severe impairment, whether or not it qualifies as a disability, is sufficient to satisfy the requirements at step two of the sequential evaluation process, thus, the ALJ does not err so long as an ALJ finds one severe impairment before proceeding to the remaining steps. *Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 891 (11th Cir. 2013). Any error in finding that an impairment is not severe is harmless if the ALJ considered and discussed the resulting symptoms alleged from those impairments elsewhere in the sequential process. *See Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 853 (11th Cir. 2013) (recognizing that the court need not consider whether the ALJ erred at step two with respect to severity of the plaintiff's cervical spine impairment because the ALJ found at least one severe impairment, and even if there was error, it would be harmless since in assessing the plaintiff's RFC, the ALJ specifically considered and discussed the symptoms that she alleged stemmed from a cervical spine impairment elsewhere in the five-step sequential process).

Here, the ALJ found at least one severe impairment before continuing with the sequential analysis and thus did not err. *Packer*, 542 F. App'x at 891. Although the ALJ did not find that Plaintiff's bilateral carpal tunnel syndrome was severe, the ALJ considered that impairment in his RFC determination, thus any error was harmless. *Id*. (affirming the ALJ's finding at step two because the ALJ found at least one severe impairment and denying the plaintiff's argument that the ALJ erred in considering her alleged degenerative joint disease because the ALJ considered

the plaintiff's musculoskeletal condition in general in other parts of the sequential analysis). The ALJ specifically considered Dr. Marquez's treatment notes, which indicate that nerve conduction studies revealed that Plaintiff was experiencing bilateral carpal tunnel syndrome, yet upon physical examination, Plaintiff did not evidence any symptoms thereof (R. 28).[2]

The ALJ also considered Plaintiff's musculoskeletal condition as a whole. For example, the ALJ relied on Dr. Roush's treatment notes, which indicated Plaintiff consistently had 5/5 strength throughout, with the exception of her right lower extremity, where she had upwards of 4/5 strength (R. 28, 645-647). The ALJ considered Dr. Roush's treatment records that memorized Plaintiff's reports of improvement to her pain (R. 30, 654, 656, 662). Because the opinion reveals that the ALJ considered the relevant record evidence and his determination of impairments is supported by substantial evidence, reversal is not warranted on this ground.

2. **Plaintiff's Alleged Symptoms**

In his opinion, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms are not entirely consistent with the evidence in the record (R. 29). Plaintiff argues that the ALJ erred in assessing her subjective complaints and finding them inconsistent with the record (ECF No. 17 at 16-17). Defendant, in opposition, cites to records relied on by the ALJ that are inconsistent with Plaintiff's subjective

---

[2] In her Motion, Plaintiff contends that the ALJ for accorded just "little weight" to the opinions of Dr. Marquez for the sole reason that they "do not assess the effects of the claimant's impairments in terms of work-related abilities," it is nonetheless important to note that Dr. Marquez opined that Melo's condition was guarded and that she carried a poor prognosis" (ECF No. 17 at 13). To the extent that this passing sentence amounts to a challenge to the weight accorded to the opinion, Plaintiff's argument is misguided. The ALJ expressly articulated a basis for assigning the opinion little weight, and thoroughly reviewed Dr. Marquez's medical notes, which indicated Plaintiff retained strength throughout, and had reported improvement to her condition. (R. 30, 654, 656, 662). *See Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858, 860 (11th Cir. 2019) (recognizing that when an ALJ articulates specific reasons for failing to give the opinion of a treating provider controlling weight, and those reasons are supported by substantial evidence, the court should not reverse the Commissioner's decision).

complaints (ECF No. 19 at 19).

Subjective complaints are evaluated under a three-part "pain standard" under which the claimant must show: (1) objective medical evidence of an underlying medical condition; and either (2) the objective medical evidence substantiates the severity of the pain from the condition; or (3) the objectively determined medical condition is of sufficient severity that it would reasonably be expected to produce the pain alleged. *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995). If such reasons are not given, then the claimant's subjective pain testimony must be accepted as true. *Id.* at 1562 (citing *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988)). However, "[a] clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Id.*

Here, Plaintiff does not argue that the ALJ erred in finding that her complaints regarding the severity of her pain were not entirely consistent with medical evidence in the record. Rather, Plaintiff mainly argues that her complaints of pain have been consistent since the filing of her application for benefits through the hearing. However, that is not the pertinent inquiry in this case. Instead, the Court must determine whether the ALJ's finding that Plaintiff's complaints concerning the intensity and severity of her pain were consistent with the evidence in the record.

Before proceeding to step four, the ALJ found that although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, the Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence in the record (R. 29). The ALJ explained that Plaintiff's testimony of disabling pain in her back, right arm, and left leg, requiring that she

lay down multiple times per day, is not entirely consistent with Dr. Marquez's treatment note that Plaintiff did not exhibit evidence of tarsal syndrome based on his examination (R. 30). The ALJ noted that medical records from October 2014 showed Plaintiff had decreased strength and sensation, however, Plaintiff reported improvement after she underwent a lumbar discectomy and lumbosacral decompression and fusion (R. 30). Indeed, the ALJ notes that Dr. Roush indicated that Plaintiff reported "good results," and that her back pain was tolerable (R. 1654). The ALJ also noted that despite her testimony of pain, 2018 emergency room notes indicate that upon physical examination, Plaintiff had normal range of motion in her back and no swelling (R. 30, 705). Because the ALJ articulated his reasons for partially discounting the claimant's subjective symptoms and the ALJ's determination is supported by substantial evidence, reversal is not warranted.

### 3. Plaintiff's Past Relevant Work

Past relevant work is work that a claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for her to learn to do it. 20 C.F.R. 416.960(b)(1); *see Perez v. Commissioner of Social Security*, 625 Fed. Appx. 408, 421 (11th Cir. 2015). "Substantial work activity" is work "that involves doing significant physical or mental activities," even if on a part-time basis. 20 C.F.R. 416.972(a). "Gainful work activity" is work activity done for pay or profit. 20 C.F.R. 416.972(b). In evaluating work activity for substantial gainful activity purposes, the primary consideration is the claimant's earnings from work activity. *See id*. §§ 404.1574(a)(1); 416.974(a)(1); SSR 83–33. If a claimant receives wages exceeding those set out in an earnings guidelines table, a presumption arises that she was engaged in substantial gainful activity during that period. *See* 20 C.F.R. §§ 404.1574(b)(2); 416.974(b)(2).

Conversely, if a claimant's "average monthly earnings are equal to or less than" the amounts listed in the earnings guidelines tables for those years, those earnings will ordinarily

13

"show that [she] ha[s] not engaged in substantial gainful activity." 20 C.F.R. 416.974(b)(3)(i); *see e.g., Vaughn v. Heckler*, 727 F.2d 1040, 1042 (11th Cir. 1984). Relevant to these Motions, the following are the necessary thresholds for substantial gainful activity in the years 2008, 2009, 2010, 2012, 2013, and 2014: $940.00, $980.00, $1,000.00, $1,010.00, $1,040.00, and $1,070.00. *See* https://secure.ssa.gov/apps10/poms.nsf/lnx/0410501015 (last visited January 6, 2021).

Although it is the plaintiff's burden to show that certain work experience is not past relevant work, the ALJ still must make the appropriate findings to ensure that the claimant really can perform her past relevant work. *Chacon v. Saul*, No. 8:19-CV-2371-T-TGW, 2020 WL 6624927, at *3 (M.D. Fla. Nov. 12, 2020) (citing *Barnes v. Sullivan*, 932 F.2d 1356, 1359 (11th Cir.1991)).

Plaintiff argues that the ALJ erred in finding that Plaintiff's job as a housekeeper was her past relevant work because her earning records fail to establish that she performed this work at a rate to meet the substantial gainful activity threshold for the relevant years (ECF No. 17 at 5-6). The ALJ, relying on Plaintiff's testimony and Work History Report (completed on Plaintiff's behalf in 2015), determined that Plaintiff had engaged in full-time employment as a housekeeper from 2004 through 2008, 2010, and 2014; and worked as a housekeeper part time as in 2012 and 2013 (R. 32, 491, 499). Although the ALJ noted that Plaintiff testified that she earned $7.00 per hour as a housekeeper (R. 31), the ALJ found that Plaintiff had satisfied substantial gainful activity in 2009, 2010, and 2012 through 2014 (R. 32). The ALJ cited to a Work History Report that indicated that in 2009, 2010, and 2012 through 2014, Plaintiff made $125.00 per day, working 3 days per week, which amounts to $375.00 per week, and $1,500.00 per month, which surpassed the amounts indicative of substantial gainful activity for those years (R. 32, 491, 499).

Plaintiff contends that although the Work History Report indicates that Plaintiff satisfied the substantial gainful activity threshold for the relevant time period, the ALJ failed to consider that the form is inconsistent with Plaintiff's earnings query (processed by the Commissioner) and inconsistent with Plaintiff's testimony at the hearing—both of which indicate Plaintiff earned substantially less income during the relevant years (ECF No. 17 at 7). Indeed, Plaintiff's earnings query indicates that Plaintiff's monthly earnings in 2008, 2010, and 2014 were well below the presumptive minimum for gainful work as follow: $743.00, $164.00, and $229.00 (R. 431, 433-34). At the hearing, Plaintiff testified that she was generally paid minimum wage, or approximately $7.00 per hour when she was a housekeeper and does not indicate whether this changed at any time (R. 91).

The ALJ erred by failing to reconcile the critical discrepancies between the Work History Report and Plaintiff's earning reports, and thus, the ALJ's determination is not supported by substantial evidence. *See Chacon v. Saul*, 2020 WL 6624927, at *4 (reversing decision for the ALJ's failure to reconcile the stark inconsistencies between the claimant's Work History Report and her earning records); *see also McCrea v. Astrue*, 407 F. App'x 394, 396 (11th Cir. 2011) (reversing in part because ALJ failed to develop the record at step four where there were evidentiary gaps in the claimant's past work history). This error is not harmless as it prevented the ALJ from continuing to step five of the sequential analysis. *See Chacon*, 2020 WL 6624927, at *4; *compare with Perez v. Comm'r of Soc. Sec.*, No. 8:15-CV-2064-T-JSS, 2016 WL 4361930, at *5 (M.D. Fla. Aug. 16, 2016).

It is also worth noting that the ALJ did not explain his reasoning for finding that Plaintiff could perform the functions required of a housekeeper. Plaintiff testified that as a housekeeper she had to clean bedrooms, bathrooms, kitchens, move furniture, and lift up to 35 pounds (R. 91).

15

While the ALJ relies on the VE's testimony that Plaintiff could perform her past job as a housekeeper, the opinion is silent as to how, in light of the medical evidence and medically determinable impairments and resulting symptoms, the ALJ determined that Plaintiff could physically and mentally could return to her job as a housekeeper. *Chacon*, 2020 WL 6624927, at *4.

Moreover, Defendant's reliance on *O'Neal v. Astrue*, No. 8:06-cv-1960-T-TGW, 2008 WL 705248, at *4 (M.D. Mar. 14, 2008), is misplaced. There, the court affirmed the ALJ's finding that the claimant's jobs as a waitress and key punch operator qualified as past relevant work, explaining that the ALJ's conclusion was reasonable under the circumstances in large part because the claimant had not advanced any evidence to the contrary: claimant's earning records supported the ALJ's conclusion regarding past relevant jobs and the claimant's hearing testimony did not contradict the ALJ's finding. *Astrue*, 2008 WL 705248, at *4. Here, there are inconsistencies in the record that require clarification, such as whether based on her earnings during the relevant time period, housekeeping constitutes past relevant work; if so, can Plaintiff return to that activity based on her impairments and related symptoms.

## V.   RECOMMENDATION

The undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment (ECF No. 17) be **GRANTED, in part**, and Defendant's Motion for Summary Judgment (ECF No. 19) be **DENIED**, and that the ALJ's decision be **REVERSED and REMANDED.**

A party shall serve and file written objections, if any, to this Report and Recommendation with Beth Bloom, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district

court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** this 8th day of January, 2021, in Miami, Florida.

_____
**LAUREN F. LOUIS**
**UNITED STATES MAGISTRATE JUDGE**